PEOPLE OF PUERTO RICO, Appellant, *v.* REGISTRAR OF PROPERTY OF SAN JUAN (FIRST SECTION), Respondent.

No. 879. Submitted December 28, 1932.—Decided March 27, 1933.

*Charles E. Winter, Attorney General,* and *R. Cordovés Arana, Assistant Attorney General* for appellant. The registrar appeared by brief.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

In the certificate issued on July 15, 1932, by the Collector of Internal Revenue of San Juan, in conformity with the law, relating to the sale at public auction for the recovery of taxes of a house located at No. 17, Roosevelt Street, Santurce, San Juan, in favor of The People of Puerto Rico, the following, among other things, was made to appear:

"That the names and personal circumstances of the delinquent taxpayer are: Manuel Mendía Morales, now his succession composed of Carmen Palés de Mendía, of full age and householder; and Rosa Morales, mother of the taxpayer, both residing at No. 17 Roosevelt Street, Santurce, Puerto Rico.

"That the assessment of the attached property amounts to $8,680.

"That the taxes, surcharges, and costs owing to The People of Puerto Rico amount to $2,254.32.

"That after the attachment of the above described property was recorded in the registry, Josefa Mendía, as a relative, was served with notice thereof by delivering to her, on November 18, 1931, a copy of the notice of attachment.

"That the notice (edicto) for the sale of said property was published in 'La Correspondencia de Puerto Rico,' on February 10, 11, 17, 18, 24, and 25, 1931, for the first auction and on June 23, 24, 29, and 30, and July 5, 6, 1932, for the second auction.

"That the property sold is recorded in the Registry of Property of San Juan, P. R., in favor of Manuel Mendía Morales, at folio 158, volume 69 of San Juan, property No. 2872, third inscription.

"That in compliance with the provisions of section 315 of the Political Code, notice of the award of the property described in this certificate was served on Carmen Palés de Mendía and Rosa Morales, mother of Mendía, as members of the succession of Manuel Mendía Morales, and to the manager of the Bank of Nova Scotia, as holder of a promissory note for the sum of $20,000, all of whom appear to have an interest in this auction sale."

Upon the presentation of this document for record, the registrar refused to record the same through the following decision:

"Record of this document is hereby denied because the property awarded is still recorded in the name of Manuel Mendía Morales

and not in that of his succession. A cautionary notice has been entered for 120 days at folio 163 of volume 69 of San Juan, property No. 2862, entry 'C,' wherein there is also noted the curable defect that the name and surname of the manager of the Bank of Nova Scotia, to whom service of process as creditor was made, do not appear.—San Juan, P. R., July 30, 1932.''

The People withdrew the certificate and after taking the necessary steps presented it again, together with the following additional certificate of the collector:

''That in order that the property to which this document refers may be finally recorded in favor of The People of Puerto Rico, the defects noted in the preceding cautionary notice, entered on July 30, 1932, for a period of 120 days, have been cured. To that end a copy of the declaration of heirship of the deceased Manuel Mendía Morales is attached hereto. As regards the failure to state the name of the manager of the Bank of Nova Scotia, such a defect was cured by expressing in the notice of sale the name of said manager, to wit, Mr. Alfred E. Griffin.''

The re-submission of the document gave rise to the decision from which the present administrative appeal has been taken by The People. The decision reads as follows:

''The conversion requested of the preceding cautionary notice entered under letter 'C' is hereby denied, after considering the order entered in the proceedings for the declaration of heirship of Manuel Mendía, because the property in question is now recorded in the name of the Bank of Nova Scotia. A cautionary notice for 120 days is hereby entered at folio 111, volume 74 of Santurce, south, property No. 7862, entry 'C,' in accordance with the decision rendered by the Supreme Court of Puerto Rico, on November 20, 1931, in the case of *José González Clemente & Co.* v. *Registrar,* 42 P.R.R. 839. San Juan, P. R., October 25, 1932.''

From a certificate attached to the brief of the registrar, we quote the pertinent part of the entry that gave rise to his second refusal:

''In the District Court of San Juan, case No. 15284, a complaint was filed by the Bank of Nova Scotia against the succession of Ma-

nuel Mendía Morales, composed of his mother Rosa Morales and his widow Carmen Palés, for the summary foreclosure of the mortgage recorded in the sixth inscription, which encumbers this property and another, in favor of the holder or endorsee of a promissory note for $90,000, this property answering for the sum of $20,000 and for other liens. The petition having been entertained, a writ demanding payment was issued and the same was personally served by the marshal on said persons on the 22d of June last. Upon expiration of the time fixed without payment having been made, a judicial sale of the property to which the demand for payment referred was ordered on the 23rd of July last. Notice of the sale having been published, on the 19th inst. the same took place, and the property was awarded to the Bank of Nova Scotia, as sole bidder, for the sum of $5,000 which was credited on account of the claim, as appears from the minutes of the auction sale bearing the same date, exhibited with the other documents. The document showing their capacity as heirs is attached hereto. By a public deed the marshal Manuel Náter Girona awarded and sold this property to the plaintiff Bank of Nova Scotia, which has its principal office in this city, represented by its agent Alfred C. Griffin, as appears from the minutes of the auction sale. . . . IN VIRTUE THEREOF, I record the property bearing this number in the name of the Bank of Nova Scotia as having been acquired by the latter by award in payment, the mortgage recorded in the sixth inscription being thus canceled by merger, and this inscription being subject to the result of cautionary notice 'C' above cited. . . . San Juan, August 29, 1932.''

In view of the foregoing, the conclusion is reached that the real question to be considered and determined herein is whether or not the record made in the name of the bank precludes the conversion into a final record of the cautionary notice previously entered in favor of The People of Puerto Rico.

We can neither affirm nor reverse the previous decision of the registrar in refusing to effect a record in the name of The People and in entering a cautionary notice for the period specified by law, as such decision was not timely appealed to this Court. Nor can we affirm or reverse the record subsequently made by the registrar in the name of the bank. We

must consider those entries as creating a status in the registry, but we shall refer to them in order to determine their scope in connection with the decision appealed from and especially to clarify the law and the jurisprudence that led the registrar to make the record in the name of the bank.

When the bank presented in the registry its deed on foreclosure sale of the house in question, the cautionary notice of the prior sale had already been entered in the registry in favor of The People, which sale was made moreover in a proceeding notified to the bank in accordance with the law. The cautionary notice bears date of July 30, 1932. The record in the name of the bank was dated on August 29, 1932. In the very record made in favor of the bank the registrar stated the following: ''This property is subject . . . to the result of cautionary notice 'C' (entered in favor of The People) for 120 days.'' The 120 days had not elapsed when the record in the name of the bank was made, nor when on October 25, 1931, the tax-sale certificate was re-submitted alleging that the defect which prevented its recordation had been corrected, and the conversion of the cautionary notice into a final record was refused on the sole ground that the property was recorded in the name of the bank.

The registrar states in his decision that he acted in compliance with the holding of this Court in *José González Clemente & Co.* v. *Registrar,* 42 P.R.R. 839.

It was held in that case that: ''Where a property is recorded in the name of a purchaser at a foreclosure sale during the existence of a cautionary notice in favor of another purchaser at a prior execution sale, it is proper to deny the conversion of such cautionary notice into a final record, in accordance with section 17 of the Mortgage Law.''

An examination of the facts stated in the opinion shows that when the first conveyance was presented, the record thereof was denied by the registrar on April 30, 1931, and

a cautionary notice was entered for a period of 120 days. The party aggrieved by the denial did not withdraw the document in order to cure the defect, as was done in the instant case. It appealed to this Supreme Court. While the appeal was pending another person purchased the property at a judicial sale held in a summary foreclosure proceeding, and the registrar recorded his title. On July 22, 1931, this Supreme Court decided the appeal taken by the first purchaser by reversing the ruling of the registrar, and when the decision of this Court was notified to the registrar, before the expiration of the said 120 days, the registrar refused to convert the existing notice into a final record on the ground that said property was already recorded in the name of another person.

The registrar based his decision not only on the fact that the property was recorded in the name of another person, but also on the ground that said person had a right superior to that of the first purchaser, as the mortgage giving rise to the second purchase had been recorded prior to the attachment in which the first purchase originated; but this Court restricted the scope of the refusal to the application of section 17 of the Mortgage Law, and held that: "Where a property is recorded in the name of a purchaser at a foreclosure sale during the existence of a cautionary notice in favor of another purchaser at a prior execution sale, the question as to the legality or illegality of the record made subsequent to the cautionary notice, or whether or not such record was properly made, cannot be determined in an appeal from a refusal to convert such cautionary notice into a final record."

Apart from the fact that we are not concerned here with a prior appeal resulting in a reversal of the original decision of the registrar but only with the voluntary curing of the defect that gave rise to the refusal of the registrar, the case is identical with the one cited and the registrar was justified in acting as it did, for it is incumbent on this Court to deter-

mine whether it will confirm or overrule the doctrine laid down in the *González Clemente & Co.* case, *supra.*

Both the appellant and the respondent refer in their briefs to sections 17 and 71 of the Mortgage Law, to the decisions of this Supreme Court in *Antonsanti* v. *The Registrar of Property,* 9 P.R.R. 171, *Hernández* v. *The Registrar of Property,* 17 P.R.R. 20, and *Ramis et al.* v. *Registrar of Property,* 18 P.R.R. 74, and to the commentator Morell.

Section 17 of the Mortgage Law has been frequently construed and applied by this Court. The section lays down the fundamental principle that "after any deed conveying the ownership or the possession of real property or of property rights therein shall have been recorded, or a cautionary notice thereof entered, no other deed of the same or a prior date conveying or encumbering the ownership of the same real property or of property right can be recorded or entered." It goes still further and prescribes that if an entry showing the presentation of a deed conveying ownership or possession shall have been made, no other deed of the character aforementioned can be recorded or a cautionary notice thereof made for a period of thirty days from the day following the date of the entry.

Section 71 has also been construed and applied by this Court on many occasions. The section is an extensive one. Its first paragraph reads: "Real property or property rights against which cautionary notices have been entered may be alienated or encumbered, but without prejudice to the right of the person in whose name the cautionary notice was entered."

For a proper determination of this case, we must also take into account section 7 of an Act to provide for appeals against the decisions of registrars of property, which reads: "Whenever any registrar shall refuse to record or enter any document or give it due legal effect, he shall make an entry of the presentment and refusal in the proper volume and page number belonging to the property in question. Such entry, how-

ever, shall have effect only during four months from the date thereof." Comp. Stat., 1911, page 425; and which is equivalent to subdivision 9, section 42 of the Mortgage Law, which provides:

"Sec. 42. The following may request the entry of cautionary notices of their respective rights in the proper public registry:
" " *     *     *     *     *     *     *     *

"9. He who files in the office of the registrar an instrument which can not be definitely recorded on account of the· omission of some requisite capable of being supplied or on account of the disability of the registrar."

Since the adoption of the amendment, no recordation is refused in Puerto Rico by reason of curable defects. Such refusal must now be based on defects regarded as incurable, and entry is then made of the cautionary notice which was formerly entered when record was refused by reason of the existence of curable defects. Experience has shown that in a great number of cases defects considered as incurable may be really curable and are in fact cured.

In 1905, the Registrar of Property, José Benedicto, refused to record the deed of sale of a piece of property because it appeared from the registry that a cautionary notice of another conveyance of the same property had been entered in favor of another person and was still in force. The party in interest took an appeal, and this Court reversed the decision of the registrar taking as a basis the provisions of section 71 of the Mortgage Law. That was the case of Antonsanti, *supra,* where it was said:

"As the Act of the Legislative Assembly referred to does not give any other effects to the cautionary notices in question, article 71 of the Mortgage Law in force must be applicable to them, as it is general for all notices of that character. According thereto 'real property or property rights entered may be conveyed or encumbered; but without prejudice to the right of the person in whose favor the notice was entered.' Consequently, applying this doctrine to this case, there can be no objection to the record of the deed of Frank

Antonsanti, without prejudice to the rights of Clemente Fernández in whose favor the first notice was entered."

Seven years later, in 1912, this Court confirmed in *Ramis et al.* v. *Registrar of Property,* 18 P.R.R. 74, the doctrine of the *Antonsanti* case, *supra,* as follows:

"According to the doctrine established by this court in the case of *Antonsanti* v. *The Registrar of Property,* 9 P.R.R., 171, the provisions of article 71 of the Mortgage Law are applicable to a cautionary notice entered because a document is not admissible to record in the registry, therefore real property or rights affected by a cautionary notice may be conveyed or encumbered without prejudice to the rights of the person in whose favor said cautionary notice has been entered and a title of sale to property affected by such cautionary notice is admissible to record."

However, a year before, in 1911, the following had been decided in *Hernández* v. *The Registrar of Property,* 17 P.R.R. 20:

"It is true that a mortgage, directly and primarily, subjects the property on which it is imposed, no matter who may be its owner, to the fulfilment of the obligation for the security of which it was constituted; but in the present case, in order to apply such principle for the purpose of determining the right of the appellant, account must be had of the fact that there existed a mortgage entitled to priority over the one from which he derived his right, namely, the one constituted in favor of The People of Porto Rico to secure the payment of taxes. As these were not paid the estate was sold, and having been acquired by Alejandrina Blanco, she had her right recorded and entered at the registry of property in the manner indicated by the registrar. In accordance with the law she, a person other than the one against whom foreclosure proceedings were instituted and in whose name the marshal had executed the deed, appears as owner of the estate, and in thus holding and for this reason refusing to record the aforesaid deed, the registrar did not violate, but has correctly applied, article 20 of the Mortgage Law."

Although the facts are somewhat different, for in the *Hernández* case not only had a cautionary notice been entered with respect to a portion of the property, but also the remaining portion had been recorded in the name of the same Mrs.

Blanco, really there is some conflict between the decisions rendered.

It seems that in the case of Hernández, *supra,* the definite provisions of section 17 of the Mortgage Law were taken into consideration and in the *Antonsanti* and *Rämis* cases, *supra,* an attempt was made to give full efficacy to the provisions of section 71 of the same law.

The question is by no means a simple one. The opinions of the commentators differ and the viewpoint set forth by the General Directorate of Registries of Spain in the various decisions made on this point, is ambiguous.

The principal difficulty lies, in our opinion, in the desire to find a single rule which will govern all the cautionary notices comprised in section 42 of the Mortgage Law.

In considering the views of the Spanish commentators, the fact must not be overlooked that the Mortgage Law was amended several times and that the statute enacted for the colonial provinces, which is our law, was not wholly the same as that of the Peninsula. Besides, the law in force in the colonial provinces was substantially modified by our Law of 1902, above cited in this instance which may be considered as comprised in section 42, subdivision 9, in connection with section 71. See *Quintana* v. *Registrar,* 36 P.R.R. 191.

However, as the question to be decided is essentially the same, we have again studied the commentators and we shall refer to them presently. Galindo at the beginning of his commentary on section 71, says:

"It is by reason of the temporary character of cautionary notices that they in general do not prevent the registrant owner of an immovable or right from exercising whatever rights of ownership he may deem proper; although even if those rights are recorded in the registry, they shall not prejudice the right respecting which the notice was entered. This seems to have been the purpose of section 71, but such purpose is not in terms stated therein, as the section simply sets forth that the property against which cautionary notices have been entered may be alienated or encumbered and consequently redeemed as declared in the decision of January 12, 1897; and it

does not say that the alienation or encumbrance may be recorded without prejudice to the right of the person in whose favor the cautionary notice was entered.

"In spite of that deficiency of expression, we take it as true that under section 71 acts of ownership relating to the property against which cautionary notices have been entered may be recorded, although the recordation made does not prejudice the right of the person in whose favor the cautionary notice was entered. (See decision of August 11, 1900.)" 2 Galindo, *Legislación Hipotecaria*, p. 694.

Morell extensively discusses the question, and at page 308 of volume 3 of his work he states:

"Although section 71 only says that the property may be alienated, it should be understood that such alienation may also be recorded, this being a logical result, under the principles of the mortgage law."

However, in another part of his commentary he seems to distinguish between the different classes of cautionary notices, and there is a passage, at page 306 of volume 3, where he says:

"Let us apply the provision to the most common case of cautionary notices respecting real rights, namely, the notices entered by reason of a defect. A sells to B, who due to the fact that his title has curable defects, applies for and obtains a cautionary notice of his right. While the cautionary notice stands, who is entitled to sell the property encumbered? Only B, inasmuch as a cautionary notice entered by reason of a defect produces as long as it stands, the same effects as a record. Should an alienation be made by A, sections 17 and 20, and 69 and 70 would militate against its recordation."

Martínez Moreda, at page 91, volume 1 of his *Comentarios y Jurisprudencia a la Legislación Hipotecaria,* is more concise than Galindo and Morell and treats the question with precision. He says:

"As cautionary notices are temporary in character, they do not prevent the owner in whose favor the real property or right has been recorded from exercising acts of ownership, by alienating or encumbering them, although the alienations or encumbrances made do not prejudice any right covered by a cautionary notice entered in favor of a person who is a stranger to the ownership thus exercised on said

real property or right. This is what section 71 of the Mortgage Law has meant to establish, and this doctrine is confirmed by the judgments of June 17, 1875, and December 30, 1876.

"Said section does not express whether the alienation or encumbrance constituted by the owner of the property may be recorded after the cautionary notice has been entered; but we infer an affirmative answer to this question because in authorizing the exercise of said acts of ownership, it is to be supposed that the recordation thereof in the registry is not prohibited.

"Proceeding from the above premise, for a better understanding of section 71, we would restate it in the following terms: The owner of real property or rights therein, even though a cautionary notice with respect to some conflicting right has been entered in favor of another person, may alienate or encumber them without prejudice to the right of the person in whose favor the cautionary notice was entered, and said acts of ownership may be recorded, without prejudice to the right of such person.

"But this rule has its exceptions because all cautionary notices do not have the same origin, do not produce similar effects, and the property in respect of which cautionary notices may have been entered are not subject to the same conditions.

"Accordingly, section 71 is not applicable to the cautionary notices referred to in subdivision 4 of section 42, as they are entered by way of attachment or prohibition against the alienation of real property. Such a case covers the situation presented by the provision of section 764 of the Law of Civil Procedure respecting the attachment of real property of a defendant in default; and it is to be noted that according to a decision of the Directorate of Registries of January 30, 1881, an alienation made subsequent to the entry of a cautionary notice against the property may be recorded when it arises from a suit to foreclose a mortgage credit, recorded prior to the cautionary notice.

"Nor is section 71 to be applied in connection with subdivision 8 of section 42, which deals with cautionary notices entered by reason of curable defects, since the owner of the property and that of the right with respect to which the cautionary notice has been entered, are one and the same person.

"We have then, that those two classes of cautionary notices are exempt from the general rule set forth in section 71. The remaining ones comprised in section 42 do not prevent the alienation or

encumbrance of the property respecting which cautionary notices have been entered, but without prejudice to the right of the person in whose favor the cautionary notice was made; for a third person who enters into a contract affecting said property will either lose the ownership or real right acquired after the entry of the cautionary notice or will have to bear the financial responsibility secured by the latter, according to the kind of cautionary notice involved.''

Support might then be found in the commentators Morell and Martínez Moreda for the doctrine laid down in the case of Hernández, *supra*. Also, in the definite provision of section 17 and in the character itself of the cautionary notice. The same thing should not be sold to different vendees. But in case of such a sale the law provides that the property shall belong to the purchaser who first recorded it, and if, as has been held, for the purpose of the application of this provision the presentation of the conveyance in the registry is sufficient (*Flores* v. *Arroyo* 43 P.R.R. 93), the more so will the entry of a cautionary notice suffice.

However, we believe that in practice the application of said doctrine would tend to restrict contractual operations, especially when taking into consideration the fundamental change in our law which requires that the final record be made even though curable defects may exist, and only authorizes the denial of such record and the entry of a cautionary notice where the registrar deems the defect to be incurable.

If the document has been correctly passed upon, the decision will be affirmed in case an administrative appeal is taken; or if the document is withdrawn, the defect can not be cured and the cautionary notice will be left without effect. Subsequent dealings with the property in respect to which a cautionary notice has been entered should not be hindered for so long a period as 120 days.

In virtue of the foregoing, our decisions in the *Antonsanti* and *Ramis* cases, *supra,* should stand, and that in the *Hernández* case, *supra,* should be overruled in so far as it is inconsistent with the other decisions.

We shall now proceed with our consideration of the question as to the recordation of rights previously noted on the registry where an intervening record exists.

If the law, the decisions, and the opinions of the commentators are examined, it will be found that there is no dissent to the proposition that subsequent transactions can be made without prejudice to the right of the person in whose name the cautionary notice was entered. It would seem logical, therefore, that the record of the subsequent transaction should not prevent in proper cases a final recordation of the right with respect to which a cautionary notice has been entered without the necessity of instituting a suit for the cancellation of such record. However, that is not so.

We know the decision of this Court in the case of González Clemente & Co., *supra*. The effect of that decision is that in spite of the existence of the cautionary notice, before the person in whose favor it is entered can enforce his right to the fullest extent, he must resort to the courts in order that the latter may decree the cancellation of the subsequent record.

Let us see what Morell—and through him—the Supreme Court of Spain and the General Directorate of Registries say on this point:

*"Alienations subsequent to the entry of cautionary notice.*—This case is covered by the provisions of section 71.

"The alienation or encumbrance has been made not only after the attachment was levied, but also after the cautionary notice was entered. The subsequent purchaser at the time of purchasing and recording is aware of the responsibility affecting the property, and acquires the latter subject to that encumbrance. The alienation is recorded but without prejudice to the right of the person in whose favor the cautionary notice was entered.

"How are the interests or rights of subsequent purchasers reconciled with those of the person in whose name the cautionary notice was entered? There are cases in which the solution of the problem is difficult. But it should be observed that section 71 does not seek to provide absolute protection for the right of the person in whose favor the alienation or encumbrance is recorded. The right of the

owner to freely dispose of his property is not curtailed, but the pur-. chaser must abide the possible consequences, of which he has notice from the entry.

"Let us examine the decisions on this point:

"There are, in the first place, certain alienations and extinctions of rights affected by cautionary notices which, although occurring subsequent to the entry of the notice, have a preferential character that cannot be defeated by the creditor in whose name the notice was entered, and which are, therefore, binding upon him. Thus, according to the judgment of February 1, 1886, the right derived by a purchaser from a mortgage recorded prior to an attachment is entitled to priority over that created by the cautionary notice itself. The notice of an attachment of the right of redemption, according to the decisions of May 18 and June 18, 1898, cannot prevent the consummation of the sale. The same is to be understood with reference to the right of the annuitant to recover arrears of annuities or the restitution of the property in case of forfeiture; to the right of the State to collect the taxes due for the last year; and to the exercise of resolutory actions based on previously recorded acts. The right of the person in whose favor the cautionary notice was entered is also defeated by the lawful extinction of the right with respect to which said notice was entered; by the death of the usufructuary if the right of usufruct has been attached; by the expiration of the term, etc.

"Apart from the foregoing, the debtor may, at any stage of the proceeding, sell the property or right attached, but without prejudice to the right of the person in whose name the cautionary notice was entered, and where an execution sale has been consented, it may not be alleged that such sale is a forced one negativing a voluntary sale, for the provisions of section 71 are definite (Decision of September 6, 1892); this, aside from the fact that it is not always indispensable to resort to the alienation of the realty in order to obtain satisfaction of a claim, since collection may be had from the rent (Decisions of October 26, 1898), or payment may be made by the debtor or by a third person.

"Application of section 17 is made generally in the judgments of May 28, 1874, and December 30, 1876, and the decisions of November 25, 1875, July 26, 1895, and August 11, 1900.

"According to the last decision cited, the right which a creditor has with respect to the properties attached is secured by virtue of the notice of attachment, because said notice stands until it is legally

canceled, the creditor's claim thereby enjoying preference over all other subsequent debts contracted by the debtor, and because the alienation of the property affected by the notice and any encumbrance thereof cannot prejudice the right acquired by the State, in accordance with sections 44 and 71 of the Mortgage Law. Such right, however, does not operate to prevent the recordation of acts of alienation or encumbrance, *or to produce the cancellation* of the entries made subsequent to the notice of attachment.

"But an encumbrance or alienation voluntarily made by the debtor never precluded the continuation of the proceeding. We reach then the case of a judicial sale to a third person or that of the award of the property to a creditor, when such grantees seek to record their rights. The real conflict now arises, for there are, assuming a previous voluntary alienation, two owners: One who bases his right on the record made under the law, and another who relies on a cautionary notice entered prior to the sale and on the provisions of section 71, according to which his right cannot be prejudiced, regardless of such alienation. Should the record of the first sale be canceled? Will the creditor of the purchaser at the execution sale be compelled to bring a new suit in order to enforce his preferential right?

"According to the terms of the report accompanying the original law; of the judgments of the Supreme Court of January 22, 1869, March 28, 1874, June 17, 1875, December 30, 1876, and others; of the decisions of November 25, 1875, May 12, 1886, and March 22, 1889; and of the opinion of the majority of the authors of said report, it was always understood, in construing section 71 in connection with section 44 of the Law, that they only secured the outcome of a suit, without creating or declaring any new right or altering the nature of the obligations involved, or converting into a real or mortgage action one which lacked such character. Hence the sale of a property, even though it was recorded later, precluded a sale subsequently made by order of the court as a result of the suit, because the court represents the owner and the owner cannot alienate the same thing twice.

" 'The principles of the Civil Law do not allow,' says Escosura, 'that the alienation of a property, made by a person with legal capacity therefor, should fail to produce its natural effects as regards the purchaser while producing them with respect to others. If the sale is a valid one (and this cannot be denied), the effect thereof

is that the purchaser acquires ownership as to every one and may defend his title against all.

" 'The principles of the Mortgage Law do not allow the record of a sale, whose validity it expressly declares, to be canceled on the ground, not that the contract or title is void, but that a deed has been executed by the same party (for the court represents him if he is in default) transferring to another person what according to the registry does not belong to him.

" 'The procedural laws do not allow, where there is conflict of private interests or rights, that the validity of the title of one person and the nullity of the title of the adverse party should be declared, unless the latter is defeated in a plenary suit.

" 'The laws governing the functions of public officers do not allow that the registrars should determine by themselves questions of ownership that are reserved to the courts; or that the record of a contract should be canceled on the mere statement of one of the parties to another contract which is in conflict with the former.

" 'The very provisions of sections 20 and 71 do not allow that either of these sections should be nullified by the other, when they act within separate spheres, the former providing that ownership can not be transferred by a person who is not the owner, and the latter merely prescribing that an existing encumbrance shall stand, even though the ownership is transferred.'

"Notwithstanding the reasonableness of this interpretation and the strength of the principles thus invoked, the truth is that whoever acquires in good or bad faith the property or rights involved subsequent to the entry of the cautionary notice, is aware of the risk and can avoid the same by paying the amount of the existing encumbrance, and it is not just that the purchaser being aware of that fact and simply because he remains inactive, the creditor should be compelled to bring an action to annul the conveyance as fraudulent, or to file a separate suit against the purchaser, with the possibility that in the end he may find himself in the same position as before and may be compelled to begin anew.

"Of course, the function of the registrar is clearly defined by the law, and he should confine himself to a compliance with sections 20 and 71. If the property is recorded in the name of a third person, or if a conveyance voluntarily made by the debtor is presented, he must deny the record of the sale or of the award, for he neither gives nor takes away rights, nor is it incumbent on him to decide

the conflict. But the resulting legal situation is disconcerting and unbearable, and requires adjustment.''

In spite of what the commentator says in the penultimate paragraph above quoted, what he states in the last paragraph might be invoked to support the case of González Clemente & Co., *supra*.

We repeat that the difficulty in arriving at a just decision is that all cautionary notices are not of the same character. The Mortgage Law acknowledged this difference and in section 71 added the following:

''If the real property or rights against which cautionary notices have been entered in accordance with the provisions of subdivisions 2 and 3 of article 42 should be awarded to a plaintiff under judgment rendered in an action brought by him, or if it should become necessary to advertise them for sale at auction, the person who may have acquired such property or rights during the litigation shall be notified of the award or advertisement.

''Such notice shall be served on motion of the plaintiff after the final judgment of award shall have been rendered or before the sale in the compulsory proceedings takes place, following the provisions of articles 260 to 269 of the Law of Civil Procedure in force in the Antilles and articles 244 to 253 of that in force in the Philippines.

''After service of the notice referred to in the foregoing paragraph, the person notified may release the property in question upon payment of the amount mentioned in the entry, as principal and costs, although it is not to be understood that he is obliged to pay a larger sum for costs than that mentioned in the entry. Should he fail to do so within 10 days, the record of his ownership shall be canceled in the registry, as well as any other records which may have been made after entry of the cautionary notice, to which end the proper order shall be issued to the registrar of property on motion of the person to whom the property was awarded or of the purchaser thereof.

''If the conveyance made and recorded during the action relates to an estate the ownership of which had been claimed by an action of which a cautionary notice had been entered, in accordance with subdivision 1 of article 42 of this law, a certified copy of the final judgment in favor of the ownership of the plaintiff shall be a valid title for its cancellation by virtue thereof.

"Final judgments imposing penalty of interdiction, or declaring the disability of a person to administer his property, or modifying his civil ability with reference to the free disposition of his property, shall be sufficient authority for the cancellation of records of conveyances made during the course of the proceedings by the person who has been declared incapacitated, provided a cautionary notice of the complaint upon which the order was based shall have been entered in accordance with the provisions of subdivision 5 of article 42."

These additional provisions did not appear in the Law in force in the Peninsula, commented on by Galindo and Morell, and are in fact decisive of the cases involving the cautionary notices to which they refer. In *Arroyo* v. *Zavala,* 40 P.R.R. 257, the provisions set forth in the first three paragraphs above noted were construed and applied thus:

"Should the purchaser at a marshal's sale be required to prosecute an action against the person who bought the property *pendente lite* and at a time when the immovable was legally subject to be sold under execution? An affirmative answer would lead to two serious evils—to an absurdity, and to an injustice under the law.

"If we consider article 71 of the Mortgage Law, which in a similar situation grants the purchaser *pendente lite* the right to release the property, but with the warning that if he fails to do so within the specified time the record of his ownership shall be canceled in the registry; if we bear in mind that section 2 of the Act relating to judgments and the manner of satisfying them (Comp. 1911, section 5296) provides that the order foreclosing a mortgage 'shall have all the force and effect of a writ of possession, as between the parties to such suit of foreclosure and any person claiming under the defendant in such suit by any right acquired pending such suit'; and, finally, if we remember that section 36 of the Code of Civil Procedure empowers a court or judge to adopt any process or method of procedure that is suitable for the purpose of enforcing the law, we are bound to arrive at the conclusion that to meet the situation by applying a procedure similar to that prescribed in article 71 of the Mortgage Law, that is, by serving notice on the purchaser and ordering the cancellation of his record in the registry should he fail to release the property within ten days, is a legal and equitable method of procedure."

Also in *Bou* v. *Registrar,* 40 P.R.R. 505, as follows:

"A conveyance from marshal Eduardo Urrutia to Adela Bou de Alvarez was presented for record in the Registry of Property of San Juan, and the registrar refused to record it 'because the property sold is recorded in the name of Agustín Hernández Mena, a person other than the defendants.'

"It appears that the purchaser, Adela Bou, had instituted foreclosure proceedings to recover from Amparo Escapa and Alfonso Ocasio the sum of $2,500, secured by a mortgage on a certain property located in Santurce, San Juan.

"Not only was the required registrar's certificate issued, preparatory to commencing the summary foreclosure proceedings instituted, but also an attachment was levied on the mortgaged property and recorded in the registry, to secure the effectiveness of the judgment that might be rendered.

"Subsequent to the issuance of that certificate and after the foreclosure proceedings had commenced and notice of the attachment entered, there was recorded in the registry a sale of the mortgaged property made by the mortgagors to Agustín Hernández Mena.

"The said proceedings were prosecuted to judgment, and the mortgaged property was sold at auction by the marshal to the foreclosing creditor for $2,000. As we have already stated, when the corresponding deed was presented in the registry, the registrar refused to record the conveyance on the ground that the property sold was already recorded in the name of the person other than the mortgage debtors.

"The foregoing would seem sufficient to conclude that, in accordance with the doctrine recently laid down by this court in *Arroyo* v. *Zavala y Cruz, ante,* p. 257, Agustín Hernández Mena is not the 'other person' (*persona distinta*) who, under the law, may preclude the record sought."

But notwithstanding the fact that such a conclusion was reached, the decision refusing the record was affirmed. In the opinion, section 71 of the Mortgage Law was quoted in full, and it was said:

"For the purposes of the registry, there is no doubt that any record made in the name of such purchaser *pendente lite* becomes subject to the condition that it shall not prejudice a right previously recorded in favor of another person. But, under the said section,

the purchaser during the litigation is entitled to release the property affected by such prior record upon payment of the amount of the encumbrance. It is the plaintiff's duty—a duty which devolves upon any grantee subrogated to the rights of said plaintiff—to notify the purchaser *pendente lite,* so that the latter may release the property within the statutory period of ten days by payment of the recorded encumbrance. In the absence of such notice, the cancellation of the record made in favor of the purchaser *pendente lite* can not be demanded, and without this cancellation an award or conveyance made in pursuance of the public sale cannot be recorded, since two antagonistic and conflicting records of ownership in regard to the same property can not coexist.

"The marshal's deed herein having been presented in the registry at a time when the property appeared recorded in the name of the person who purchased it during a litigation involving such property, the registrar applied section 20 of the Mortgage Law and refused the record. In our opinion he has no other choice for the present. If the petitioner or plaintiff in the proceedings wherein the award was made desires to enforce his rights as a grantee, he should follow the procedure prescribed by section 71 of the Mortgage Law and move for service of the required notice. If the purchaser pays within the statutory period, the plaintiff is not prejudiced; if he fails to do so, his record is canceled and the bar to registration is removed."

In *Dávila et al.* v. *Registrar of Humacao,* 24 P.R.R. 660, this Court had occasion to construe and apply the last two paragraphs of said added provisions, as follows:

"We see no reason why the appellants are not entitled to have their deed recorded in its entirety. The transfers and records in favor of the creditor and his alienees were made subsequently to the entry of the complaint in the registry, and with full knowledge of the pendency of the suit, and subject to its results. The object in making an entry of the complaint is to warn other persons that if they acquire thereafter any claim to the property entered it will be lost if the person causing the entry of the complaint obtains judgment in his favor in the suit originating said entry. The registrar's refusal to record a part of the property on the ground that the same is recorded in favor of third persons, appears to be based on section 20 of the Mortgage Law which provides that in order to record or enter instruments transferring or encumbering the ownership or

possession of real property or property rights, the interest of the persons conveying it, or in whose name the transfer or encumbrance is made, must be previously recorded. This provision refers to records in general, but not to those that might be made as a result of a suit entered in the registry, for as to those cases section 71 is applicable, which while allowing the conveyance or encumbrance of real property or property rights entered without prejudice to the right of the person in whose favor the entry may have been made, in one of its paragraphs provides, where the conveyance has been recorded, that a certified copy of the final judgment in favor of the ownership of the plaintiff shall be a valid title deed by virtue of which such record may be canceled, which provision finds its complement in section 142 of the Regulations for its execution, equivalent to section 76 of the Spanish Mortgage Law providing the manner in which a cautionary notice may be converted into a final inscription upon the final acquisition of the right entered by the person in whose favor the entry has been made. See the Decisions of the General Directorate of Registries of Spain of September 10, 1881, and January 19, 1897.

"The deed which is the subject of this appeal being, therefore, recordable; the decision appealed from should be reversed and the registrar directed to record the same, converting the cautionary notice into a final entry, and canceling the subsequent entries to the cautionary notice."

See also the cases of *Heirs of Franceschi* v. *Registrar,* 42 P.R.R. 820; *Díaz* v. *Registrar,* 39 P.R.R. 107; *Quintana* v. *Registrar,* 36 P.R.R. 191; and *Bello et al.* v. *Registrar of Arecibo,* 31 P.R.R. 112.

But the case at bar—one of a cautionary notice entered in connection with the refusal to record by reason of a defect considered as incurable—is not covered by said additional provisions, and it would be an act of judicial legislation for this Court to hold that the conversion of the cautionary notice into a final record lies, the record made subsequent to the entry of the cautionary notice being canceled by virtue of such final record. Were we to decide that said conversion was proper and that it did not have the effect of canceling the previous record, such decision would be tantamount to

definitely decreeing the coexistence of conflicting records, and this is wholly contrary to the purposes of the registry.

Therefore, unless the Legislature amends the law by prescribing the procedure to be followed in cases falling under section 42 not covered by said additional provisions of section 71 or the Mortgage Law, in situations like those presented by the case of González Clemente & Co., *supra,* and the one we are now considering and deciding, no matter how plain the right of the persons in whose favor the cautionary notice was made might seem to be, and notwithstanding the priority in time of the steps taken by them in the registry, they are precluded from securing therein a final and effective record until they obtain in a contested suit before the proper court a judgment directing the cancellation of the record made subsequent to the cautionary notice.

The rule acknowledged and applied in the case of González Clemente & Co., *supra,* must prevail and, consequently, the decision appealed from herein must be and 'is hereby affirmed.